Good morning, Your Honors. May it please the Court. Tim Long for the petitioners, MHN Government Svcs and Managed Health Network, Inc. I would like to reserve five minutes for rebuttal. Your Honors, the theme that I would like to strike for this argument, and I think results in why the District Court should be overturned, is that the lens that I would like to strike for this argument is that the federal substantive FAA law. When you look at Supreme Court opinions, the Court uses words like emphatic, liberal, a rare case that an arbitration agreement is not enforced. When you look at this Court's rulings, for example, in Mortenson, where the Court commented that arbitration agreements may be entitled to preference, what you take away from that is a teaching that under the FAA, what courts should do is look for ways to enforce an arbitration agreement, as opposed to look for ways not to. And what we fundamentally are submitting here is that when the District Court was presented with options about whether to enforce or to find something that was whether even though there was ample authority to find that that provision was lawful, the Court took a different direction. And in that respect, the Court was informed by the California Supreme Court decision in Armendaris. And while Armendaris sets forth what the black letter law is with regard to procedural and substantive unconscionability, I dare say that that application of those are the high arbitration cases that have come along. But to be clear, we're not asking that all the law with regard to unconscionability be swept aside. What we're saying is that in this case, as the District Court applied those principles, the District Court got it wrong. Why? Because, as I said, the lens in which the District Court was looking at each one of the provisions was not informed by the strength of the FAA law. Well, it doesn't seem like the lens the District Court used was that different from the lens our own Court used in Shavaria. So maybe you can address why you don't think Shavaria points us in the direction of affirming. Absolutely, Your Honor. Thank you for answering the question. Let's start with the plaintiff in Shavaria. She was a deli clerk. By contrast, we have highly educated, sophisticated people, many of whom have their own practices, who would be used to negotiating contracts and Second, unlike Shavaria, where she wasn't even provided the arbitration agreement until three weeks later. Before you move on, I mean, there's no evidence, is there, that this contract was negotiated? It looks like a preprinted form that you're just the prospective employee is given to review and sign if they want. I mean, I'm not saying they didn't have enough time, but it doesn't seem like there was any opportunity to negotiate. Like, I don't want to agree to paragraph 4, sub D. That observation would ignore the plain language of the arbitration agreement, which had in bold language a modification section that would invite somebody to negotiate. I think that all that provision said is that this agreement can't be modified except in writing. I don't remember it saying, oh, we're open to a negotiation. Please put forward your proposal, and we'll consider that and get back to you. It doesn't say that. But it invites the opportunity to negotiate. And the American Software case, Your Honor Let's take a look at it, because I don't remember that at all. So just point me to what paragraph you're talking about. I don't have the paragraphs in front of me, Your Honor. My point is this. Well, you don't remember what the language says? We contend it invites people, if they want to engage in a conversation regarding the modifying the PSTOA, that they may do so. Do you remember what the paragraph number is? I don't offhand, Your Honor. Oh. All right. Well, I have it. It's paragraph 14. It says, modification. This agreement or any part or section of it can be amended only by mutual written consent of the parties. Where does it talk about, hey, please present your counterproposal. We'll consider it. I guess what I would say here, Your Honor, is in that instance, that when you look at whether that provision and the issue about whether you can negotiate, a court can take two views. That's not an invitation to negotiate, and therefore, it's presented as to take it or leave it, or it is. It just doesn't speak to the issue of negotiation at all, counsel. I'm just saying it says modification, and it says this thing is the agreement unless you can point to something else in writing that is modified. That's all it says. It doesn't speak to in favor of negotiation or anti-negotiation. Isn't the teaching point, Your Honor, under the law, that if you are going to make the argument that you don't have an opportunity to negotiate, you must have had you must have attempted to negotiate. There's no evidence here with regard to that. And this is a critically important point. The burden here to prove unconscionability is on the plaintiffs. It's not on us. They came forward with no evidence that they attempted to negotiate. And under the American Software case, that was a critical point. There was no evidence that the person had attempted to negotiate. And that was one of the reasons the Court pointed to for the ---- Roberts. Was there evidence in Chabria that the deli clerk attempted to negotiate? Gannon. No, there was no such evidence. Of course, it's hard to negotiate something that was given to you three weeks after you purportedly agreed to it. We don't have that issue here. It's undisputed. I'm just saying, though, I don't think the law is nearly as clear as you're saying, that you can't find procedural unconscionability unless you've shown some affirmative attempt to strike a particular provision that you found objectionable. So, again, Your Honor, what I would suggest here, that with regard to looking for ways to enforce or looking for ways not to enforce, Federal substantive law from Moses H. Cone Memorial Hospital through Concepcion onward to Mortenson suggests that what courts should do is look for ways to enforce. If there had been evidence provided in this case that the plaintiffs had attempted to negotiate and were rebuffed, that would be persuasive evidence. If there was evidence that the plaintiffs had not read or didn't know about the arbitration agreement, that would be persuasive evidence. But we have none of that evidence. Instead, what we have is a record that this wasn't hidden. They had market opportunities to reject or not. These are sophisticated people. This isn't cheveree whatsoever. Let me take a next step further with regard to cheveree with regard to the issues of substantive unconscionability. One of the big issues in cheveree was the arbitrator selection procedure, which in this case was one of the provisions that the court found was substantively unconscionable. We would submit, and we've always contended, that in this case, what MHN would be doing would be going to AAA to select three names of neutral arbitrators. And let me emphasize the word neutral, because in the district court's opinion, she read out that word. And that is a critically important word. And in cheveree, there was not a requirement that the arbitrator be neutral. Moreover, in cheveree, you couldn't rely upon a AAA-appointed arbitrator or a jams arbitrator, and that was important in this court's eyes, because you did have to Counsel, let me ask a question on the arbitrator selection issue. And it ties in also with severance. If we were to uphold that the provision on selection of three arbitrators was unconscionable, but it could be severed, what would happen under the Arbitration Association rules? How would the arbitrator be selected? Then what would happen, Your Honor, is the AAA rules would act as a gap filler. And under the AAA rules, if memory serves me correctly, the parties ask the AAA for a list of arbitrators, and arbitrators then can be stricken. Okay? So the point the important point here is, were the court to strike that provision and sever it, there is a procedure in place because it's undisputed that the AAA rules would gap fill to address what you're supposed to do in that situation. And that's what I thought was the case. So could you address the whole issue of severance? Because at least I don't, not speaking for the panel, but just myself, I felt some of the provisions were enforceable and some of them were not. And so for me, severance is a critical issue. With regard to severance, Your Honor, the district court relied upon Armendariz and found that where there are multiple provisions that are substantively unconscionable, that should presume some sort of nefarious intent to do what? Force somebody to arbitrate. If you look at the language of the Armendariz case, how it characterizes arbitration, words like courts should look at arbitration with particular scrutiny. Inherent shortcomings in arbitration. Disadvantages to plaintiffs exist. It is in my mind, almost ipso facto what's going to happen. If you find multiple provisions that are substantively unconscionable, it is going to be, the decision is going to be you're not going to sever because there's an unlawful purpose. That runs right counter to what the FAA stands for. And in fact, if one looks at the civil code, what you see is that courts can sever. And if you overlay that with the FAA, then courts should sever. Now, there's a limitation on that. That is where you have to reform the contract. So if you have to reform things and rewrite things, that would, I would submit, be a limitation. But that's not the case here. That's why in our opening brief, we pointed out if you sever these provisions, even all of them, you have a workable arbitration agreement, rules that govern the arbitration, people know what to do, and they can arbitrate their claims. And fundamentally, that was what the agreement was in this situation. No, I agree with you on that. But I, again, look at Chavarria, and there was no severance there. I mean, are you telling me, I guess, maybe what, the argument wasn't raised? So far as I'm aware, Your Honor, the argument wasn't raised. It was not addressed in the opinion at all. And what was missing, if anything, in Chavarria is, what rules would you apply? So if you sever certain provisions, like, for example, the selection of the arbitrator and that, what do you do? You've got nothing to fall back on. Here, we do have something to fall back on. We have the AAA rules. There, it was disavowed. You couldn't use the AAA rules or JAMS rules. So in Chavarria, presumably if the argument had been made, one of the arguments in the contrary would be, well, wait a minute, we would have to reform the contract and add provisions to, how do we select an arbitrator? What rules do we apply? None of those problems exist in this instance. We're backstopped by the AAA rules. Can I, your time is running low, and I do want to ask you about the issue preclusion argument. So, but maybe you can address that. I guess that seems, I will just speak for myself. I mean, I'm sort of inclined to say, hey, you, not you, but your client had a pretty good shot in the Washington Supreme Court. The main argument you seem to raise in your reply brief just had to do with this very technical issue about, well, under CAFA that case should have never been before them. And I didn't find that terribly persuasive, but I want to give you a chance to persuade me that we shouldn't follow the Washington Supreme Court. I would agree, your Honor, that to a certain degree, the notion of the case should have never been before them was more visceral in nature. But we had other arguments as well. One of which that had never been presented to the district court. And in fact, what the plaintiffs have said, if the decision by the Washington Supreme Court went against them, they would like the opportunity to brief that, which in our view is an example of non-mutual collateral estoppel. But importantly, there are three other reasons, and this was the paramount thrust of our position as to why this court can and should take notice of this. Under Washington law, there is an exception to matters of public policy of great importance. I can think of, I can think of many other examples, but clearly this fits within that. Second, the Supreme Court has made the common sense observation that when federal law is at issue, federal courts should interpret federal law. And then you overlay that with a congressional mandate to enforce the FAA, I think it all combines to say this court should decide how federal substantive law should be applied. Just one last question, and we'll give you some time for rebuttal. So you're not disputing that the Washington Supreme Court resolved the same issue that's before us? In terms of substantive and procedural incontrovertibility, yes. And in fact, what's interesting is yes. You are disputing it, or you're not disputing it? Oh, no, I'm not disputing it. Yes, it reached it, and I'd also point out something that's interesting. It reached contrary, in certain points, it reached contrary positions. I know. And that's what I would say from a, if you will, go back to the common sense notion. We're in federal court. You're applying federal law. This court should be the one that should decide and make sure that with regard to such inconsistencies, they don't occur. Okay. We'll give you some time for rebuttal. Thank you. Let's hear from the plaintiffs. Good morning, Your Honors. May it please the Court. Shahan Saghafi for the plaintiffs' appellees. The Court should affirm Judge Ilston's carefully reasoned opinion, which, as the Court has noted, agrees with nine justices of the Washington Supreme Court, as well as another judge, totaling 11 judges, finding that following Concepcion and the FAA and faithfully applying conventional, straightforward state law of contract interpretation under California law. Judge Ilston correctly found that the agreement was permeated by five substantively unconscionable aspects, plus procedural unconscionability, justifying her exercise of discretion in not severing it, but finding it unenforceable. And that decision fits squarely within this Court's pre- and post-Concepcion cases, like Davis, McCorny, Chavarria, and Mortenson, and California law, pre- and post-Concepcion, Armendariz, and now Sonic-Calabasas from last year. So our challenge is to identify the line between what kinds of rules from states are preempted by Concepcion and the FAA, and which are not. So Concepcion and Marmot and Mortenson, I would submit, identified state rules that were inimical to arbitration. So they strike at the heart of arbitration by either precluding it as to a whole category of claims, or by perverting it by dictating the manner in which it's conducted and weighing it down and overriding its informality and efficiency. Alito, or just express hostility to arbitration. Just put a thumb on the scale against arbitration, which I think is the Constituent's main argument here, is that California law, unconscionability law in particular, and maybe especially as it applies in the employment context, it's just, it's permeated with this hostility to arbitration. I think there have been many situations, particularly in the class waiver context. So Concepcion addressed that head-on, of course, where California courts were again and again addressing that situation in applying gentry, applying that particular aspect of Armendariz. But if you take that component away, the rest of the analysis still holds. And that's why this Court continues to cite and rely on Armendariz over and over and over, and Concepcion did without criticizing any other aspect of Armendariz. And the crux of it is that we look to State law to try to figure out what the contract interpretation rules are. And so MHN has done a very effective job, I think, of raising this hostility notion. But if you look at the text of Armendariz and now Sonic-Calabasas, and this Court's cases over the past decade-plus, and the California courts of appeals cases during that time, they do often cite arbitration opinions. But that's because that's the context in which these issues are coming up, often with class waivers, sometimes with not. But they're relying on a very continuous strain of authority that is rooted in contract interpretation. So traditional cases like Chavarria and Picorni and Davis versus O'Melveny that don't address a special rule that's itself directed at arbitration, but is just directed at traditional unconscionability analysis, still stand. So I think it can be helpful to go into Armendariz and Sonic-Calabasas. And Sonic-Calabasas, of course, in particular, because it's from last year, it engages Concepcion and the FAA. And it recites, it relies on Armendariz because those aspects of it are still good law, but it also elucidates the underlying principles that these analyses are founded on. And it relies on Williston on contracts. So I think they're getting very much down to basics to say, what is contract unconscionability analysis? Well, they say, it's long been the proper role of courts enforcing the common law to ensure that the terms of a bargain are not unreasonably harsh, oppressive, or one-sided. And then it goes on and cites a few different ways of looking at that. And the one that MHN seizes on, of course, is the most extreme one, which is shocks to conscience. And that's the one that the descent in Sonic-Calabasas, Justice Chin, seizes on as well. Well, MHN wishes that that was the standard, and Justice Chin wishes that that was the standard, but it's not the standard. The standard that's quoted by the majority is, unconscionability doctrine is concerned with terms that are unreasonably favorable to the more powerful party. So it's not, it doesn't have to shock the conscience, but if it's unreasonably favorable, that is substantive unconscionability. And then we have, as you, Judge Watford, were eliciting earlier, the procedural unconscionability aspects, too. And as long as you have some of both, and it's a sliding scale, so you can have a little bit of procedural unconscionability and a lot of substantive unconscionability, which is what we have here, then that renders the contract unenforceable. And I can talk about severance as well, because, Judge Gould, I heard you loud and clear. So... Well, I'm interested in it. If I could just comment. There are at least a few parts of the arbitration provision that I'm not seeing a problem with, like Fenyu in San Francisco, or limits on discovery. And so, if there are other parts, like the selection of the arbitrators, that strike me as unconscionable, then I'm wondering, can they be severed without tossing out the whole arbitration provision? So, I'll recite them to answer your question, if I may. So, I think you're right, that the limits on discovery are the least unconscionable of the seven unconscionable aspects in the contract. The forum selection clause, I think, is unconscionable with respect to Judge Elston, because somebody who performed work in Virginia, somebody who performed work in Florida, to have to fly here and litigate a case in San Francisco, it's certainly easy enough for me. I live here, but it's difficult for everyone else. MHN is based here. They chose their home field. So, I think that's unconscionable, and that has been held to be unconscionable in other cases. But those are perhaps the two closest calls. In addition, we have a six-month statute of limitations. So, under the UCL, you have a four-year statute of limitations, Section 17200. So, employment claims, as well as other kinds of claims, can be brought with a four-year statute, and now they have a half-year statute. So, they're dividing all your damages by eight. So, you've got an $80,000 claim. All of a sudden, it's magically a $10,000 claim. That is clearly substantively unconscionable, as held by this Court in Davis, and most recently in Elite Logistics, which is the unpublished case by the California Court of Appeal. So, six-month statute is a hugely unconscionable provision. The fee-shifting rules are extremely unconscionable, because not only do they award fees to the prevailing party, they award fees to the substantially prevailing party. So, under normal rules, if a worker asserts three claims, and they win one and they lose two, they will recover fees. Under a substantially prevailing party scheme, they can win one, lose two, and they have won their claim, and they have to pay MHN $100,000 or who knows how much in attorneys' fees. So, that is also substantively unconscionable. The limitation on punitive damages is well established to be unconscionable. The Arbitrator Selection Clause, if AAA has 1,000 judges, excuse me, arbitrators, MHN can choose its three favorite arbitrators and stick the other party with that. That has been held unconscionable. And I would submit that that is not oriented towards arbitration. That's not disproportionate to arbitration, because you can imagine a similar provision in court. So, in state court in California, you have a right under 170, California Civil Code, Civil Code of Civil Procedure 170.6, to strike the judge. If you don't like the judge, you get one shot to preemptory challenge them, essentially. You can imagine a contract that says, you're not allowed to use your 170.6 strike if we like the judge enough. Or in the Northern District of California, you might get assigned to a magistrate when you file your complaint, but you have to consent to them. So MHN could say, you know what, you're not allowed to consent if we don't want to, or excuse me, you have to decline consent if we want you to, or vice versa. Or you have to agree to transfer or to MBL the case if we want it to be in a different venue or before a different judge. And then lastly, the filing fees, excuse me, there's punitive damages limitation and there are filing fees that are grossly disproportionate, 7 to 15 times higher than the normal. Okay. So, I mean, you've done an effective job, I think, of explaining why there are problematic provisions, but why couldn't you just strip out all of those and still say, but you guys still did agree to arbitrate this dispute. That's a very good question. And so grammatically, I think MHN is correct, that you can strike those words. And the Court can take a red pen and place Grivener and rewrite the contract. But under unconscionability doctrine, that's not what you do. So as Mr. Long said, California Civil Code allows the court the discretion to sever or to deem it unenforceable. That's exactly what Williston says. That's exactly what Sonic Calabasas says. And so in thinking about this, I was wondering why do courts so consistently choose not to sever, even when there's one unconscionable provision or two or three. And here we have five, or arguably I would say six, but Judge Elston didn't go with me on that last one. So why do they choose not to sever when they easily could? And the answer is that we don't want to incentivize overreaching by parties to just jam the contract full of all sorts of unconscionable add-ons, or maybe they'll insert one and it can be severed, no big deal. Maybe they'll insert five and they can be severed, no big deal. But if you allow severance, there's no penalty for or no disincentive to the party in the superior position of bargaining strength to not overload or just sneak in whatever it wants, because there are no damages available, and there are no damages available from an unconscionable contract. So the only remedy is some change to the contract or rendering it unenforceable. If you look at the non-arbitration contracts that are analyzed in the cases cited by MHN, the analysis on whether to sever is a little bit different, because when you don't have the arbitration clause, you're looking at the entire contract, so the entire relationship of the parties. I'm agreeing to ship on my vessel a million dollars' worth of wheat, and you receive it on this date, and there are components to the contract. And if there's something unconscionable in there, you will try to sever it if you can, and they're still going to have to deliver the wheat and pay the million dollars, because that's the entirety of the contract. Here, we have essentially kind of two contracts in one, or a subset, where the arbitration component is so weighed in the stronger party's favor that striking those little components, excuse me, removing the entire provision and deeming it unenforceable does not undo the work that was performed by the worker. The worker is still performing the work. They're still getting paid. It's just a separate component. So I think the crux of it is that we don't want to incentivize parties to overreach, because then there's no penalty for them doing so. And in fact, knowing those rules of severance and knowing these rules of unconscionability, MHN has rewritten its arbitration contract, and now it has a bulletproof arbitration contract that doesn't have any of these seven items that I mentioned. It doesn't have the six-month limitation. It doesn't have the fee shifting. It doesn't have even the form selection. And so I think in fear of the enforceability, or excuse me, the unenforceability of the arbitration provision, MHN did the wise and fair thing, and now people are subject to fairer arbitration agreements. Okay. Well, maybe they can live and learn, but let me ask this. Are there any cases after Concepcion in our Ninth Circuit or in any of the Federal Circuits that have assessed the impact of Concepcion on the question of severance? Not that I know of, Your Honor. I don't believe so. So if you had to analyze it as a matter of first impression, what is your position as to whether Concepcion has any impact on the severance issue? I think the analysis is, starts with Section 2 of the FAA, which is, do we have a contract? Is there a generally applicable contract defense? Then, and that analysis goes through all of this unconscionability test and severance. And then, once you have one, you go to Section 4, which is, and the general principle elucidated in Concepcion, which is enforce the arbitration provision where you can. But the threshold question is, do we have a contract? Do we have an agreement that's enforceable under general State law? So I think we still look to State law, and we still can go to Williston and the general principles that are found there. So I don't think that Concepcion changes that analysis. As I said initially, I think Concepcion is oriented towards approaches that are categorically hostile to arbitration or load it down with procedures that will pervert it and turn it into something that it's not, and strip it of its efficiency. And that's the only place where Concepcion uses that disproportionate language, is at the end of the discussion of those three hypotheticals of what if we use the federal rules of evidence? What if we had a right to a jury? What if we had judicially monitored discovery? And at the end of that, it says, well, those on their face could be framed neutrally, 12 lay arbitrators, but they disproportionately impact arbitration because, seriously, we all know that they are really oriented towards arbitration. So I think those are the kinds of cases that Concepcion teaches us are preempted, and that's why Mortenson and Mamet, the West Virginia nursing home case, and Concepcion fall in one category, and all of this Court's and the California Court's clear jurisprudence over the past decade before and after Concepcion remain solid authority that this Court can follow. So I am out of time. Kennedy. Your time is almost up, but I have one final question. I just want to double-check something. In 1991, the Supreme Court in a case called Gilmer says, although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the parties should be held to it unless Congress itself has an intention to preclude a waiver of judicial remedies for the statutory rights at issue. I haven't looked. I didn't see anything in your memo, nothing in the FLSA has such a preclusion, correct? I think that was under the ADEA in Gilmer. I think the same analysis could apply to the FLSA. There's a different analysis that applies under the NLRA. I don't know if that's what you're asking about. The NLRB's recent opinion in Murphy Oil, I think, is very compelling with respect to there being substantive Federal rights that are in tension with the FAA that the reason why arbitration would not be enforceable. I'm not sure if I answered your question. Thank you. Thank you, Your Honor. Thank you, counsel. Let's put three minutes on the clock for appellant's counsel. Thank you, Your Honor. Your Honor, if I could pick up on your question with regard to severance, I would agree with counsel. I'm unaware of any decision that analyzes this issue. But I think the answer is pretty clear. And the reason I say it's pretty clear is because of where I started my argument. This is an issue of substantive Federal law. If you go back to the Moses H. Cone Memorial Hospital case, Justice Brennan made that point. And he also said that Federal substantive law applies to interpretation of contracts and defenses. So when this Court is looking at issues of State law, it has to be informed by how the Federal courts have interpreted things. Now, with regard to severance, let's take it out of the arbitration context. Let's face it. What's being attacked in this case? Arbitration. Not the rest of the PSDOA. Arbitration. Now, if you look at the Civil Code, the Civil Code sections 1599 and 1670.5 basically make the point, if you have multiple provisions, some unlawful and some lawful, the courts can strike those unlawful provisions. Again, delimitation being reformation. The FAA, then, would suggest you should. Why? Because there's an agreement to arbitrate. Now, does this mean that there is a windfall to parties in superior bargaining positions, or one that presumes that, in this case, MHN had a superior bargaining position? But let's look at it in reverse. MHN entered into an agreement to arbitrate. That was the deal. Now, the plaintiffs are coming back and saying, wait a minute, even though we agree, we have defenses that trump that. And I would submit that once you sever those provisions, so long as you do as you have here, a provision that you can enforce, the court can and should sever. One final comment. My reference to the lens. In all the cases that talk about unconscionability, the courts are instructed to look at the contract at the time it was entered into. And as our briefing pointed out, for each one of these provisions, there was authority to enforce those provisions. The six-month statute of limitations, that was recognized by the Soltani case, which is a timing mechanism. It doesn't cut off damages. It's very much akin to Title VII, the LMRA, and the like. And, of course, you've got to look at that mutually. So, for example, if MHN wanted to sue somebody for failing to or misrepresenting their credentials, that's a three-year statute of limitations. So you've got mutuality here. And I could go on. Punitive damages. The Pacific Health Care System case talks about one shouldn't presume that punitive damages, that limitation would apply to penalties or the double damages under the FLSA. My point here is that if you look at the contract ex ante, again, at every juncture, you have an option, enforce or not enforce. But ultimately, if the court decides that there are three or four or even five provisions that are unconscionable, in this instance, you can sever those provisions and have an enforceable arbitration agreement. Thank you, Your Honor. Thank you, counsel. We appreciate both sides' very helpful arguments in this case. The case just argued will stand submitted. And we are in recess until tomorrow.
judges: Martinez, Gould, Watford